370 A.2d 1155

**COMMONWEALTH of Pennsylvania**

v.

**Darrell McKELVIE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 30, 1976.

Decided Feb. 28, 1977.

Rehearing Denied March 28, 1977.

542

Duane, Morris & Heckscher, Ronald F. Kidd, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

Appellant Darrell McKelvie has been found guilty by a jury of murder in the first degree and related charges.[1] Post-trial motions were denied and he was sentenced to life imprisonment on the murder conviction. Appellant now appeals from that judgment of sentence, asserting three trial errors.[2] Finding no error, we will affirm.

The salient facts are as follows: On the evening of July 28, 1974, two males approached a group of teenagers clustered around the front of a dwelling in North Philadelphia. One of the two had a gun which he fired several times into the group before passing it on to his companion, who fired several more shots. As a result, one of the teenagers, Robert Henry Davis, was killed, and two others were injured. The police arrived promptly at the scene and questioned two witnesses to the incident—Kevin Kreamer and Darwin Jones. From them the officers learned that the two gunmen were members of a local gang and were known respectively as "Crazy Earp" and "Little Man." These witnesses (as they later testified at the suppression hearing) were acquainted with the appellant, Darrell McKelvie, having seen him around the neighborhood on the basketball court or at the bus station; he was known to them as "Little Man" and as "Mutt." Their descriptions of McKelvie and Earp were broadcast to other police officers

---

1. This Court has jurisdiction only over the appellant's conviction of murder in the first degree under the Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202, 17 P.S. § 211.202 (Supp.1976–77). No appeal has been filed from the related charges, which were two counts of aggravated assault and conspiracy.

2. Appellant has not questioned the sufficiency of the evidence against him. We have, however, made an independent examination of the record, *see* the Act of February 15, 1870. P.L. 15, § 2, 19 P.S. 1187, and are satisfied that there is sufficient evidence to support the verdict in this case.

in the vicinity, and, within a half-hour of the shooting, the two suspects were stopped by the police about two blocks from the scene of the crime and arrested. After a brief stop at the North Central Detective Unit, McKelvie and Earp were taken to a hospital to be identified by one of the persons who had been wounded, and thence to the Police Administration Building. There they were escorted, handcuffed, to a waiting room outside the Homicide Division office. Four witnesses to the shootings, including Darwin Jones, were then waiting in the same room. On seeing McKelvie and Earp passing through the room, Jones called out to the police officers, "They are the ones."

Appellant's principal defense at trial and the core of his argument before this Court is the inadequacy of the identifications on the basis of which the jury found him guilty. Appellant produced testimony at trial that his nickname was "Mutt"; that he had never been known in the neighborhood as "Little Man", but that another member of McKelvie's gang had been known by that soubriquet. Appellant's counsel argued that the witnesses who identified McKelvie in court must have been so confused as to mistake him for the person whose nickname was "Little Man." Appellant now contends, further, that none of the witnesses, at the time of the shooting, had enough time or light to observe the gunmen clearly. These facts are put forward primarily to support appellant's argument that there was no independent basis for the original identifications made by the witnesses who testified against him at trial, that those identifications are inextricably tainted by the allegedly inadmissible identifications made by Darwin Jones in the presence of other witnesses at the time of the waiting room confrontation and that, therefore, the in-court identifications by these witnesses should have been excluded. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ The trial court, after hearing testimony on a motion to suppress identifications by these four witnesses, admitted only in-court identifications by those witnesses who had previously known the appellant.[3] Accordingly, we are now concerned only with the question of whether the identifications made by any of these four witnesses at trial had an independent basis to justify their admission. We agree with the trial judge that the prior contacts of the witnesses with McKelvie were sufficient for this purpose, distinguishable from the effects of any possible primary taint. *United States v. Wade, supra; Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Rankin,* 441 Pa. 401, 272 A.2d 886 (1971). Any discrepancies in the testimony of these witnesses about the name by which they knew the appellant went to the weight but not to the admissibility of their evidence. *Commonwealth v. White,* n. 3 *supra.*

■ McKelvie's second assignment of error is that the trial court committed an abuse of discretion in denying a continuance of trial requested by defense counsel to enable counsel to obtain a transcript of the suppression hearing testimony for use in cross-examining the witnesses at trial. Appellant has shown no prejudice to him resulting from the denial of this continuance and probably could not do so in view of the fact that the trial immediately followed the suppression hearing and that the reporter, with his notes, was available throughout the trial to read back portions of the testimony upon request.

3. On the motion to suppress, McKelvie argued that the waiting room confrontation was, in effect, an uncounseled line-up and that Darwin Jones' identification of him at that time was itself inadmissible. Furthermore, he argued, identifications made by the other witnesses shortly after they had heard this exclamation, were also inadmissible because of the unavoidable taint of Jones' identification. Although the trial court found that this confrontation had been truly accidental and that the identifications made at that time were admissible under *Commonwealth v. White,* 447 Pa. 331, 290 A.2d 246 (1972), he nevertheless limited the testimony as stated above. The record contains no articulation of the reason for this ruling.

546

See *U. S. v. Brierly*, 501 F.2d 1024 (8th Cir.), *cert. den.* 419 U.S. 1052, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974).

■ Appellant's last contention is that the trial judge unfairly and prejudicially emphasized in his charge only the evidence presented by the Commonwealth and thereby misled the jury. To the contrary, having read the record, including the charge, we find the court's summary of the evidence reasonable and balanced.

Judgment of Sentence affirmed.